UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 09-767-C**

**ROYAL & SUN ALLIANCE**
**INSURANCE, PLC,**                                                                              **PLAINTIFF,**

**V.**                    **MEMORANDUM OPINION AND ORDER**

**MERCURY LOGISTICS, INC.,**                                       **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on Mercury Logistics, Inc.'s, motion for summary judgment on its counterclaim against Royal & Sun Alliance Insurance, PLC (R. 74). The court will deny Mercury's motion because the tariff that Johnson & Johnson, Inc., negotiated with Priority Solutions International, Inc., is ambiguous as to whether Mercury is a third-party beneficiary of the limitation-of-liability provision. A jury, not the court, must resolve that ambiguity.

Also pending before the court is Priority's motion for summary judgment on Mercury's third-party complaint (R. 62). The court will deny that motion as premature pending any additional discovery.

**I. BACKGROUND**

A subsidiary of Johnson & Johnson sold ten pallets of pharmaceuticals to McKesson Corporation. Johnson & Johnson arranged to ship the pharmaceuticals from its facility in Shepherdsville, Kentucky, to two McKesson facilities in

Pennsylvania and Connecticut.

Priority is Johnson & Johnson's freight forwarder. Priority hires and coordinates carriers, such as truck lines and airlines, to transport Johnson & Johnson's goods. The arrangement provides Johnson & Johnson "one-stop shopping" for its shipping needs, saving the company from having to spend time and money coordinating and paying various carriers. Johnson & Johnson negotiated with Priority a contract, called a tariff, that provides an array of shipping rates. The tariff also contains a provision that a carrier's absolute limit of liability for loss is $50 unless a higher value is declared. R. 77-2 at 15.

For the McKesson shipment, Priority hired Mercury to pick up the goods in a truck at Johnson & Johnson's Shepherdsville facility. Mercury was supposed to transport the goods to its facility in Louisville, enshroud them in additional packing material, and deliver them to the Louisville airport, from where they would be flown to Pennsylvania and Connecticut.

On November 25, 2008, a Mercury truck arrived at the Shepherdsville facility. Johnson & Johnson employees loaded the shipment onto the truck. A Johnson & Johnson representative completed two Johnson & Johnson-issued bills of lading, one for the goods destined for Pennsylvania and the other for the goods destined for Connecticut. Each of the bills of lading contained a blank to declare a value of the goods and a warning that limitation of liability might apply. R. 74-4 at 2-3. Johnson & Johnson's representative did not declare a value. *Id.*

2

Each of the bills of lading also contained a statement that the goods were received "subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper ...." *Id.*

Mercury's driver delivered the shipment to Mercury's Louisville facility. While he was waiting for a loading dock to become available, the driver left the truck unattended to use the restroom. By the time he returned, someone had stolen the two pallets of pharmaceuticals. Royal & Sun, Johnson & Johnson's insurance carrier, paid nearly $560,000 to compensate for the loss.

As Johnson & Johnson's subrogee, Royal & Sun sued Priority in the U.S. District Court for the Southern District of New York. The parties agreed to dismissal of that action. Royal & Sun then commenced this action against Mercury, which in turn filed a third-party complaint against Priority for contribution and indemnification. Mercury also filed a counterclaim against Royal & Sun in which Mercury seeks a declaration that its liability is limited to $50 per pallet if Mercury is found liable for the loss.

Mercury moves for summary judgment on its counterclaim. Priority moves for summary judgment on Mercury's third-party complaint.

## II. MERCURY'S COUNTERCLAIM

Mercury claims that its liability is limited under the Johnson & Johnson-Priority tariff, even though Mercury is not a party to the tariff. The court will deny summary judgment on that claim; although no genuine issues of material fact exist

3

as to whether Priority properly limited liability, such issues do exist as to whether Mercury is an intended third-party beneficiary of that limitation.

    A.  <u>Limitation of liability</u>

Federal common law governs the determination of whether Priority properly limited liability. The Carmack Amendment to the Interstate Commerce Act normally governs how a motor carrier or freight forwarder such as Priority must limit its liability for loss during an overland shipment. *See generally* 49 U.S.C. § 14706. The Carmack Amendment, however, exempts the shipment in this case from its coverage.

The Carmack Amendment contains an exception for the "transportation of property … by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier . . . ." *Id.* § 13506(8)(B). The Carmack Amendment does not define "continuous movement." Courts have determined whether cargo moves in a continuous movement by examining a shipper's intent based on the facts and circumstances of a particular case. *Nipponkoa Ins. Co. v. Towne Air Freight, LLC*, No. 4:08-cv-796-CAS, 2009 U.S. Dist. LEXIS 93525, at *11-*12 (E.D. Mo. Oct. 9, 2009) (citing *Ga. Textile Mach., Inc. v. Fed. Express Corp.*, 556 S.E.2d 845 (Ga. App. 2001); and *Shorts v. United Parcel Serv.*, 1999 U.S. Dist. LEXIS 2366 (N.D. Tex. Feb. 25, 1999)). The facts and circumstances of this case indicate that Johnson & Johnson intended for the pharmaceuticals to move in a continuous movement. Johnson & Johnson issued "through bills of lading" that

covered the shipment from origin to destination, whether the shipment was on a truck or an airplane. Through bills of lading are indicative of a shipper's intent. *Id.*, at *10 (quotation omitted). Johnson & Johnson also knew that Priority was managing the entire shipment regardless of the mode of transportation. The evidence indicates that Johnson & Johnson intended for the overland leg of the shipment to occur incidentally to the air leg. The Carmack Amendment, therefore, does not apply.

State law would normally apply in the absence of a federal statute. The court, however, agrees with the parties that federal common law pre-empts state law in this case. Courts have consistently held that the limitation of liability in interstate shipping is a creature of federal law. The Carmack Amendment, for example, broadly pre-empts state law. *See W.D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419, 421 (6th Cir. 1972); *Am. Synthetic Rubber Corp. v. Louisville & Nashville R.R. Co.*, 422 F.3d 462, 466, 468 (6th Cir. 1970). See *also Underwriters at Lloyds of London v. N. Am. Van Lines*, 890 F.2d 1112, 1116-21 (10th Cir. 1989). Federal law also governs the limitation of liability with respect to rail, air, and maritime transportation. *See*, respectively, 49 U.S.C. § 10501; *King Jewelry, Inc. v. Fed. Express Corp.*, 316 F.3d 961, 965 (9th Cir. 2003); and *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 23 (2004). Congress probably did not intend to leave a case such as this one – a narrow seam surrounded by federally governed areas of law – to the domain of state law.

The court, then, must determine the federal common law requirements that

5

Priority had to satisfy. Only two federal courts appear to have addressed cases involving a fact pattern identical to this one, and those courts have taken different approaches. One court followed the "*Hughes* test," which applies in Carmack Amendment cases. *Nipponkoa*, 2009 U.S. Dist. LEXIS 93525, at *14-*15. Under the *Hughes* test, a carrier seeking to limit its liability must (1) maintain an approved tariff with the Interstate Commerce Commission ("ICC"); (2) obtain a shipper's agreement as to its choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a bill of lading or receipt prior to shipment. *Id.*

Another court applied a more liberal scheme. *Shorts*, 1999 U.S. Dist. LEXIS 2366, at *15-*16. The *Shorts* court considered essentially the same criteria and evidence that it would have if it had applied the *Hughes* test. The court, however, tailored the proof necessary to satisfy the *Hughes* criteria to the facts of the case, requiring only that the carrier have provided the shipper reasonable notice of the liability limitation, regardless of whether the shipper had actual knowledge of the liability limitation. *Id.,* *16-*18, n.5. The *Shorts* court found a basis for tailoring the proof in case law involving air transportation. *Id.* (quoting *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 930 (5th Cir. 1997)).

The *Shorts* court took the better approach. Federal common law governs air carriers' liability limitation. *N. Am. Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233 (2d Cir. 1978). Although that body of law requires satisfaction of essentially the same elements that the *Hughes* test requires, it tends to take into

6

account the circumstances of a particular case, including the sophistication of the shipper. *See, e.g.*, *Cash Am. Pawn, L.P. v. Fed. Express Corp.*, 109 F. Supp. 2d 513, 519 (N.D. Tex. 2000). The court must assume that Congress knew that this body of federal common law existed when it carved the Carmack Amendment's exception for shipments transported in a continuous movement with air transportation. *Cf. Info-Hold, Inc. v. Sound Merchandising, Inc.*, 538 F.3d 448, 455-56 (6th Cir. 2008). The court, therefore, can assume that Congress contemplated that a court would apply air-carrier case law to a case such as this one. *Id.*

This court's approach is not at odds with the Sixth Circuit's precedent, which adopted the *Hughes* test in *Toledo Ticket Co. v. Roadway Express, Inc.*, 133 F.3d 439 (6th Cir. 1998) and *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999). *Toledo Ticket* and *Trepel* involved shipments covered by the Carmack Amendment; they do not govern an excepted case such as this one. The court has latitude to fashion a precise test for this particular case in light of the Carmack Amendment's exception and in the absence of further statutory guidance. The approach that the court applies in this case, moreover, is not at odds with *Toledo Ticket* and *Trepel* because the court is applying the *Hughes* test. The court is only tailoring the proof that Priority must supply to demonstrate satisfaction of the *Hughes* criteria based on the circumstances of this case.

Applying the *Shorts* approach, Priority properly limited liability. First, Priority had to provide Johnson & Johnson, on Johnson & Johnson's request, a written or

7

electronic copy of the rate, classification, rules, and practices upon which any rate applicable to a shipment, or agreed to between the parties, was based. 49 U.S.C. § 14706(c)(1)(B). Although the *Hughes* test historically required that a carrier such as Priority maintain a tariff with the ICC, Congress modified that requirement after it abolished the ICC and placed the burden on the shipper to request pertinent information. *Id.* Johnson & Johnson received a copy of Priority's rates, classifications, rules, and practices in the parties' tariff. Johnson & Johnson, after all, negotiated that tariff. Royal & Sun does not allege that Johnson & Johnson requested any additional information from Priority.

Second, Priority provided Johnson & Johnson a fair opportunity to choose between two or more levels of liability. *Toledo Ticket*, 133 F.3d at 442; *Trepel*, 194 F.3d at 715. Johnson & Johnson is a sophisticated shipper; the company has issued thousands of bills of lading. R. 71-2 at 43-45; *Cash Am. Pawn*, 109 F. Supp. 2d at 519. Johnson & Johnson had ample opportunity to choose a level of liability when it negotiated the tariff with Priority and issued its own bills of lading. Priority did not have to provide Johnson & Johnson actual notice of the liability limitation. *Treiber & Straub, Inc. v. United Parcel Serv., Inc.*, 474 F.3d 379, 385-86 (2d Cir. 2007); *Shorts*, *16-*18, n.5. Johnson & Johnson knew how to negotiate for more carrier liability and could have done so had it desired.

Third, Priority obtained Johnson & Johnson's written agreement to choice of liability. *Toledo Ticket*, 133 F.3d at 443; *Trepel*, 194 F.3d at 715. The tariff presented Johnson & Johnson with a choice: declare a value higher than $50 or

8

live with the $50 limitation. Johnson & Johnson made its choice clear. The bills of lading directed Johnson & Johnson's representative to declare a value and warned of the possibility of a liability limitation in the absence of a declaration. Johnson & Johnson's representative left the spaces blank and signed the bills. Priority provided Johnson & Johnson reasonable notice of the liability limitation. *Shorts*, 1999 U.S. Dist. LEXIS 2366, at *16-*18.

Royal & Sun unsuccessfully attempts to discount the significance of the bills of lading. A Johnson & Johnson shipping director, George Harry, asserted in an affidavit that the company used the bills of lading merely as receipts, not as forms to declare value. R. 77-2 ¶ 7. Harry's affidavit fails to create a material fact issue. The bills of lading must be evaluated from an objective perspective. *See Banque de Depots v. Nat'l Bank of Detroit*, 491 F.2d 753, 756 (6th Cir. 1974). Harry's statement provides evidence only of Johnson & Johnson's subjective intent. And although the court is hesitant to hold Royal & Sun to a judicial admission, it is notable that Royal & Sun relied on the opposite premise – during oral argument and in its supplemental brief – when it argued that the continuous-movement exception applies because Johnson & Johnson used "through bills of lading." R. 87 at 1-2.

Finally, this case satisfies the requirement for a receipt or bill of lading. *Toledo Ticket*, 133 F.3d at 443-44; *Trepel*, 194 F.3d at 715. Johnson & Johnson issued its own bills of lading. Although the *Hughes* test requires that a carrier issue a receipt or bill of lading, a shipper-issued bill of lading is sufficient. *See, e.g.*, *Siren, Inc. v. Estes Express Lines*, 249 F.3d 1268, 1271-73 (11th Cir. 2001).

9

In sum, the tariff, the bills of lading, and the circumstances surrounding the parties' negotiations and transportation of the goods leave no genuine issue of material fact that Johnson & Johnson received reasonable notice of the limitation of liability and assented to the limitation. Priority properly limited liability.

B. Third-party beneficiary

Genuine issues of material fact do exist, however, as to whether Mercury is an intended third-party beneficiary of the tariff's limited-liability provision. In their briefs and during oral argument, the parties agreed that federal common law applies to the third-party-beneficiary issue because it is intertwined with the limitation-of-liability issue. They also agreed that the court should interpret any ambiguous terms as a matter of law instead of submitting the issue to a jury. The court agrees with the parties that federal common law applies, but the court cannot resolve ambiguity in a contract as a matter of law and rely on extrinsic evidence to do so because there is contested evidence for a jury to resolve. *See Royal Ins. Co. of America v. Orient Overseas Container Line Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008).

Parties must clearly state in a contract their intention to benefit a third party. 9 *Corbin on Contracts* § 44.4 (2007 ed.); *Restatement (Second) of Contracts* § 302. Johnson & Johnson and Priority's intent is ambiguous. The tariff provides as follows:

> ***Priority*** offers cargo liability insurance up to $100,000 per shipment charged at the rate of $.50 for each $100 of value declared. For shipments valued in excess of $25,000, advanced arrangements are suggested. Where

10

> no value is declared, the ***carrier's*** absolute limit of liability is $50.

R. 77-2 at 15 (emphasis added). The term "carrier" is undefined. It could mean Priority, Priority and downstream carriers, or only downstream carriers. Any of those interpretations is reasonable. Ambiguity exists if language is susceptible to two or more reasonable interpretations. *See Orient Overseas* at 421.

The record in this case contains contested evidence. For example, Chris Carpenter, Priority's president, asserted during his deposition that Johnson & Johnson knew that Priority was not using its own trucks, indicating that Johnson & Johnson understood the term "carrier" to include downstream carriers. *See, e.g.,* R. 71 at 25-26, 59-63. Royal & Sun, by contrast, relies on the affidavit of George Harry, who asserted that he understood the term "carrier" to refer to Priority because Priority was the sole company that Johnson & Johnson dealt with. R. 77-2 ¶ 4. A jury will need to evaluate each side's version and decide which one is more persuasive.

Royal & Sun argues that if the court finds ambiguity it should not send the issue to a jury but construe the tariff against Priority under the *contra proferentum* rule, which means that the tariff should be construed against Priority because Priority is the drafter. The *contra proferentum* rule, however, applies only when there is no evidentiary dispute that might illuminate the parties' intent. *Orient Overseas*, 525 F.3d at 424-25. The court cannot employ a legal sleight of hand to displace a jury's evaluation of disputed evidence.

Royal & Sun also argues that Priority should have included a "Himalaya

11

Clause" in the tariff if it intended to sweep downstream carriers such as Mercury within the limitation provision's reach. A Himalaya Clause, however, which is commonly used in overseas shipping contracts, is unnecessary to benefit third parties. "There is no special rule for Himalaya Clauses;" the intent of contracting parties to benefit third parties should be evaluated by the terms of the contract consistent with the intent of the parties. *Norfolk S.*, 543 U.S. at 30-31.

Finally, Royal & Sun posits that Priority separately negotiated full liability with Mercury and that Priority acted as Johnson & Johnson's agent in securing full liability. The only evidence that Royal & Sun offers in support of that theory is a new vendor form that Mercury completed and submitted to Priority. *See* R. 77-8. The new vendor form contains a statement that Priority requires its vendors to carry a minimum insurance policy of $500,000. *Id.* The new vendor form, however, does not memorialize a contract between Priority and Mercury. Mercury completed the form to provide to Priority essential information, such as emergency contact information, the number of drivers it employs, and warehouse square footage. A jury could not reasonably find that the form demonstrates the existence of contractual rights or obligations, or the parties' assent to be bound.

    C. <u>Material deviation</u>

Royal & Sun briefly argues against summary judgment on the basis of the material deviation doctrine. Because the court is denying summary judgment on other grounds, the material deviation argument is moot on this motion.

## III. MERCURY'S THIRD-PARTY COMPLAINT

Mercury's claim for contribution fails as a matter of law. Contribution is no longer a valid claim after the Kentucky courts recognized comparative fault. *Dix & Assocs. v. Pipeline Contractors, Inc. v. Key*, 799 S.W.2d 24, 27-28 (Ky. 1990). Even if a jury apportions fault to Priority, Mercury will bear liability only for its portion of the total fault. *Stratton v. Parker*, 793 S.W.2d 817, 820 (Ky. 1990). Priority would have nothing to contribute to Mercury.

Mercury's claim for apportionment also fails as a matter of law. Mercury need not join Priority as a party to obtain an apportionment instruction. *See* K.R.S. § 411.182(4); *Baker v. Webb*, 883 S.W.2d 898 (Ky. Ct. App. 1994); and *Bass v. Williams*, 839 S.W.2d 559 (Ky. Ct. App. 1992).

Although the court has doubts about whether federal common law applies to contribution and apportionment, the court agrees with Priority and Royal & Sun that the most approximate federal case law yields the same result as under Kentucky law. *See McDermott, Inc. v. Amclyde*, 511 US. 202, 217 (1994).

Indemnification, however, is still alive under Kentucky common law. *Degener v. Hall Contr. Corp.*, 27 S.W.3d 775, 780 (Ky. 2000). Mercury would be entitled to indemnity if Priority exposed Mercury to liability based on acts that Priority <u>did not</u> commit concurrently with Mercury. *Id.*

Mercury represents that the parties have yet to take any proof on the facts surrounding the actions of the parties at the time of the loss; ascertain whether negligence was involved; or take any proof on the circumstances surrounding the alleged theft of the cargo. R. 64 at 2. During oral argument, Mercury reiterated its

13

view that summary judgment on the indemnification issue is premature.

The court will deny Priority's motion as premature. If Mercury declines to take additional discovery, Priority may renew its motion for summary judgment on the pleadings already filed. If Mercury does take additional discovery, Priority may renew its motion at the close of discovery if Priority believes that the additional discovery fails to yield a genuine issue of material fact on the indemnification issue.

## IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that both Mercury's motion for summary judgment (R. 74) and Priority's motion for summary judgment (R. 62) are **DENIED**.

**IT IS FURTHER ORDERED** that the parties shall submit a joint proposed scheduling order for the remainder of this action within fourteen days of the date of this order.

Signed on August 31, 2011

*Jennifer B. Coffman*
**Jennifer B. Coffman, Judge**
**United States District Court**